UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Criminal Docket No. 3:14-CR-34

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| vs. | ) | DEFENDANT'S MEMORANDUM TO |
| | ) | SUPPORT MOTION TO SUPPRESS |
| JERRY LEE EDWARDS. | ) | |
| | ) | |
| Defendant, | ) | |
| _____ _ | ) | |

THIS MATTER is before the Court on Defendant's "Motion to Suppress Evidence", Doc. 21, filed on March 26, 2014. The Government did not file a Response as allowed by Local Criminal Rule 47.1€ The Court entered an order calendaring the case for a hearing on May 14, 2014. Doc. 23. In support of his Motion to Suppress, Defendant offers the following, to wit:

I.     <u>FACTUAL BACKGROUD</u>

I.     On August 15, 2013, Officer C.R. Tolley, S.D. Fulton and Officer Salazar all of Charlotte Mecklenburg Police Department were on duty and in full uniform operating PDA#749.

II.     At 1: 33 AM, Officers were patrolling the motel corridor of the Budget Inn located at 4330 Old Interstate Road in Charlotte, North Carolina, within the Western District of North Carolina.

III.     According to the officers, they were patrolling the PVA of the Budget Inn because the area is known for robberies and being an open drug market.

1

**IV.** The officers claimed that they observed an unknown black female sitting in a dark grey Toyota vehicle with all exterior and interior lights turned off, and a black male sitting in the front passenger side.

**V.** Officer Fulton claimed that as they were walking towards the parked vehicle with interior and exterior lights turned off, at night, he saw defendant made an abrupt motion towards his waist band and or glove box.

**VI.** Officer Fulton immediately drew his service weapon on the driver, Sangia Kemah Jahmallah, and ordered her to put her hands up, and also ordered defendant to show his hand. As defendant raised his hand in compliance to the officer order, the officer claimed that he observed a marijuana cigarette in defendant's right hand.

**VII.** Officer Fulton then opened the door and grabbed both of defendant's hands and handcuffed him.

**VIII.** After detention of defendant, without probable cause or search warrant. Officer Fulton observed a black smith and Wesson XD handgun in glove box, 9.2 gram of suspected crack cocaine in defendant's right front pocket, 19. 8 gram of suspected white powder cocaine in defendant's left cargo pocket and .25 caliber handguns in defendant's left front pocket.

**IX.** Officer Salazar also searched the vehicle and found a silver handgun in the back seat, which was concealed in a white t-shirt.

**X.** The stop of Defendant was unlawful; the evidence seized as result of the illegal detention should be suppressed.

## II. ANALYSIS

### A. <u>The Officers lack reasonable suspicion under Terry or Probable Cause</u>

. In particular, Edwards claims that the stop of the car lack reasonable suspicion under Terry, the officers lack probable cause to search the vehicle he was passenger in, the detention and subsequent search was performed pursuant to an unconstitutional investigatory detention. Edwards contends that there is simply no justification for the officer to have detained and searched the car. Edwards thus argues that the evidence gathered from the vehicle on August 15,

2013 must be suppressed under the Fourth Amendment as the fruits of an unlawful search. See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "These rights are not second-class rights, but rather are among the rights held most sacred by the progenitors of the Bill of Rights and most guarded by the common-law tradition." United States v. McCoy, 513 F.3d 405, 410 (4th Cir. 2008) (internal quotation marks and citations omitted). The Supreme Court has announced the general rule that a search or seizure without probable cause is unreasonable and, thus, unconstitutional. See Kyllo v. United States, 533 U.S. 27, 32, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001) (noting that searches without probable cause are "presumptively unconstitutional"). This general rule, however, is "subject to certain exceptions," Brigham City v. Stuart, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006), and "[w]e are to approach the Fourth Amendment . . . with at least some measure of pragmatism," Mora v. City of Gaithersburg, 519 F.3d 216, 222 (4th Cir. 2008).

It is well established that the "[t]emporary detention of individuals during the stop of an automobile by the police . . . constitutes a 'seizure,'" no matter how brief the detention or how limited its purpose. See Whren v. United States, 517 U.S. 806, 809, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); see also Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 556-58, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren, 517 U.S. at 810.

To comport with the Fourth Amendment, even a "brief" investigatory detention "must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia, 448 U.S. at 440, 100 S.Ct. 2752; see United State v. Foster, 634 F. 3d 243, 246 (4th Cir. 2011). Considering the totality of the circumstances, the Court is to determine whether there was a sufficient objective, particularized basis for suspecting the person seized of criminal activity. United States v. Arvize, 534 U.S. 266, 273, 122 S. Ct. 744. 151 L.Ed. 2d 740 (2000). Evidence that would support only "a mere 'hunch' is insufficient, "though a reasonable basis need not establish probable cause and may well "fall considerably short of satisfying a preponderance of the evidence standard. Id. at 274, 122 S.Ct. 744 (quoting Terry, 392 U.S. at 27, 88 S. Ct. 1868); cf. United States v. Digiovanni, 650 F. 3d 498, 511 (4th Cir. 2011) ("The reasonable suspicion standard is an objective one, so the Court should examine the facts within the knowledge of the officer to determine the presence or nonexistence of reasonable suspicion.") The Constitution requires "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Griffin, 589 F. 3d 148, 152 (4th Cir. 2009) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L.Ed.2d 621 (1981) (emphases added). As the Supreme Court noted in Cortez, "this demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." Corte, 449 U.S. at 418, 101 S.Ct. 690 (quoting Terry, 392 at 21 n. 18, (1968). "The central concern underlying the Fourth Amendment is the concern about giving police officers unbridled discretion to rummage at will among a person's private effects "; Delaware v. Prouse. 440 U.S. 648, 661, 99 S.Ct. 1391, 59 L. Ed. 2d 660 (1979).

"Whether a seizure occurred depends on the totality of the circumstances, and the test has an objective component to the extent that it is a reasonable person's interpretation of the police

conduct that is determinative. United States v. Wilson, 953 F. 2d 116, 121 (4th Cir. 1991) (citing United States v. Gordon, 895 F. 2d 932, 937 (4th Cir. 1990)). The relevant inquiry is whether "the hypothetical reasonable person would have felt free to ignore [the officer's] questions and go on his way." Id. The Fourth Circuit has further explained that "freedom to leave means fundamentally to break off contact, in which case officers must, in the absence of objective justification, leave the [person] alone." Id. At 122 (quoting United States v. Flowers, 912 F. 2d 707, 712 (4th Cir. 1990)).

The determination of "[w]hether a seizure occurred at all is an intensely fact-bound matter." Id. At 121. The Court considers several specific factors in determining whether a reasonable person would feel free to leave, including, but not limited to:

> (i) the number of police officers present at the scene; (ii) whether the police officers were in uniform; (iii) whether the police officers displayed their weapons; (iv) whether they "touched the defendant or made any attempt to physically block his departure or restrain him movement"; (v) "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"; (vi) whether the officers informed the defendant that they suspected him of illegal activity rather than treating the encounter as 'routine' in nature", and (vii) "whether, if the officer requested from the defendant…some form of official identification, the officer promptly returned it.

United States v. Black, 707 F. 3d 531, 537-38 (4th Cir. 2013) (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980; United States v. Gray, 883 F.2d 320, 322-23 (4th Cir. 1989)).

Considering the totality of the following circumstances, this Court should find that Mr. Edwards initial encounter with the police was a seizure because a reasonable person in Defendant's position would have not feel free to leave. Defendant was a passenger in a vehicle in a private hotel parking lot. The officers were in uniforms, firearms were drawn

on defendant, ordered to get out, handcuffed immediately, police car parked directly in front of the car he was a passenger in. The tone was that of command and there were more than three uniformed police officer present.

The presence of four armed uniformed officers with their weapons drawn was excessive, for a routine encounter, overwhelming and intimidating. The officer touched Defendant by grabbing his hand and cuffing them, parking of the police car physically blocked Defendant's ability to leave which further made Defendant feel that he was not free to leave

The facts of this case are more egregious compared to the Court's decision in United States v. Jones, 687 F.3d 293 (4th Cir. 2012) where the court found a seizure. In Jones, two police officers, in a marked patrol cruiser, closely followed a car from a public road onto private property, and then blocked the car's exit. The officers observed no traffic violation. The only suspicious activity the officers claimed they saw was the car was present in a high-crime neighborhood with out-of-state tags. These facts led the officers to suspect that the car's occupants, four African American men, were involved in drug trafficking. Immediately after the driver, Frederick Jones, exited his car, the officers approached him and asked that he lift his shirt, which he did. The officers then asked him to consent to a pat down search, which he did. The Court found that this was not a routine encounter, but seizure one targeted at Jones, particularly significant given that officers blocked in John's car to effectuate the encounter. Jones 687 F. 3d at 301(4th Cir. 2012). Likewise in this case, the officers parked directly in front of the car Defendant was a passenger in.

In United States v. Green, 111 F. 3d 515 (7th Cir. 1997), there the police followed a car into a driveway where the driver parked the car, and then exited his car. Id. at 517. The Seventh Circuit

concluded that, although the driver was no longer in his car, and indeed was walking away from his car toward a house, when "the officers pulled their car behind defendant's car, blocking the car's exit… a reasonable person would not feel that he was free to leave." Id. at 520 n. 1. The Court found that the police had seized not only the passenger who remained in the car but also the driver who had left it. Id. Likewise, the officers' conduct in this case convey to Mr. Edwards and any reasonable person that he was not free to leave.

### 2      **HIGH CRIME AREA**

According to the officers, the reason they were paroling the hotel parking lot was because "this area is known for robberies and being an open air drug market. The fact that this was a "high-crime area" counts among the totality of the circumstances this court should consider, but it does little in this case to support the claimed particularized suspicion. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); see Brown v. Texas, 443 U. S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). This is true because "presence in a high crime neighborhood is a fact too generic and susceptible to innocent explanation to satisfy the reasonable suspicion inquiry." Wardlow, 528 U.S. at 139, 120 S.Ct. 673. To hold otherwise would be tantamount to permitting a regime of general searches of virtually and individual residing in or found in high-crime neighborhoods, where complaint of crimes are all too common. U. S. v. Massenburg, 654 F. 3d 480, 488 (4th Cir. 2011) (emphasis added). James Otis famously decried general searches as "instruments of slavery…and villainy," which "place the

liberty of every man in the hands of every petty officer," warning against abuses by "every man prompted by revenge, ill humor, or wantonness." Massenburg citing Timothy Lynch, In Defense of the Exclusionary Rule, 23 Harv. J.L & Pub. P. 711, 722 (2000) (quoting James Otis, Speech on the Writs of Assistance (1761). "In our present society, the demographics of those who reside in high crime neighborhoods often consist of racial minorities and individual disadvantaged by their social and economic circumstances. To conclude that mere presence in a high crime area at night is sufficient justification for detention by law enforcement is to accept *carte blanch* the implicit assertion that Fourth Amendment protections are reserved only for a certain race or class of people" United States v. Black, 707 F. 3d 531, 542 (4th Cir. 2013). "In the words of Dr. Martin Luther King, Jr., we are reminded that 'we are tied together in a single garment of destiny, caught in an inescapable network of mutuality.' That our individual freedom is inextricable bound to the freedom of others. Thus, we must ensure that the Fourth Amendment rights of all individuals are protected." Id. at 542. What is more telling is this case is the fact that no called for service was made that morning for suspected robbery non did the officers saw what looks like a drug deal.

### 3.     **VOLUNTARY POLICE ENCOUNTER**

The Fourth Amendment guarantee the right of the people to be secure against unreasonable searches and seizures. U. S. Constitution. Amend. 1V. However, "[t]his guarantee does not extend to all police –citizen encounters." United States v. Jones, 678 F.3d 293, 298-99 (4th Cir. 2013). Law enforcement officers are lawfully permitted to approach a person in a public place and speak with the person and ask the person to answer a few questions. Florida v. Bostick, 501 U.S. 429 (1991). "[A] seizure does not occur …..the encounter is consensual and no

reasonable suspicion is required." 501 U.S. at 434. However, during such a contact, an officer may only ask routine questions and ask for identification, so long as the officer does not portray the contact as compulsory. Bostick, 501 U.S. at 437. In this case, the offices did not ask routine questions, instead, the officer tone was that of order, that requires compulsory compliance. Defendant was ordered to put both of his hand up to be handcuffed. "Whether the encounter was voluntary or a seizure occurred depends on the totality of the circumstances, and the test has an objective component to the extent that it is a reasonable person's interpretation of the police conduct that is determinative. United States v. Wilson, 953 F. 2d 116, 121 (4th Cir. 1991) (citing United States v. Gordon, 895 F. 2d 932, 937 (4th Cir. 1990)).

Considering the totality of the circumstances of this case, the encounter here was not voluntary or reasonable; Instead, Defendant argues that it was a seizure. It is clear that the moment the Officers saw the defendant, a black male, seating in a parked car at 1:30 am in an area in which the officers labeled as a high crime area, that they have intention of detaining him. An encounter would have been to ask him what he was doing at the parking lot, whether he is a customer of the hotel and ask for some kind of identification.

Instead, the officers parked there police car in front of the car defendant was a passenger in blocking its exit ,approached defendant with their guns drawn, ordered defendant to get his hands up and immediately cuffed both of his hands. He was subsequently ordered out of the car and the car was searched. Even if the Court found that the initial contact was voluntary, these police actions changed the encounter not to an investigatory detention but rather to a seizure. A reasonable person in defendant's position would not have felt free to leave nor considered this a voluntary encounter. In Commonwealth v. Helm, 399 Mass. 298, 503 N.E.2d 1287, 1288 (1987),

the Court found investigatory stop occurred when officer "parked the police cruiser so as to block the defendant's parked automobile and prevent it from leaving the parking lot. In this instant case, this was not even an investigatory stop because the facts here are more egregious than the facts in United State v. Hensely, 469 U.S. 221 (1985)

A finding that a seizure occurred precludes any argument that it was a "reasonable" detention despite a prior lack of justification. The officers may not rely on events or observations after the illegal seizure. See e.g., United States v. See, 574 F. 3d 309, 313(6th Cir. 2009) The Court held that event subsequent to the commencement of the seizure cannot be used to bolster the argument that they had reasonable suspicion. See Sibron v. New York, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968) ("An incident search may not precede an arrest and serve as part of its justification."). The marijuana cigarette that dropped after the officer ordered defendant to raise his hand up and cuffed should not be a bases to justify this illegal seizure as a voluntary encounter. Even when viewed in the light most favorable to the government, this evidence should not convince this Court that officers had "reasonable and articulable suspicion" of ongoing criminal involvement as would justify the restraint on Mr. Edwards's freedom. The officers could actually see that nothing of criminal nature was happening in the car. Notwithstanding the officers claimed that they were able to see inside a car with no interior or exterior light at 1:30 am in a dark parking lot, that Mr. Edwards made sudden movement towards his waist or glove box; without some indication of criminal activity, this act cannot tip this case to reasonable suspicion. "Reasonable suspicion" does not equate with some suspicion of wrongdoing. The Fourth Amendment guarantees that the liberty of even the criminals among us will not be restrained without an objectively reasonable basis. "To hold otherwise would begin to

transform this free society into one where traveler must present papers or proffer explanations to be on their way" United States v. Flowers, 912 F.2d 707, 712 (4th Cir. 1990).

    4.    <u>FURTIVE OR SUDDEN MOVEMENTS</u>

In <u>United States v, Forster</u>, 634 F.3d 243 (4th Cir. 2011), the Government suggested that a man's "suddenly popping up in a car with his arms going haywire was suspicious." Foster, 634 F.3d at 247. There, the Appellate Court warned against "using whatever fact are present, no matter how innocent, as indicia of suspicious activity." and reminded the Government that it "must do more than simply label a behavior as 'suspicious' to make it so"; "The Government must also be able to either articulate why a particular behavior is suspicious or logically demonstrative, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity that may appears at first glance." Id at 248.

In <u>United States v. Sprinkle,</u> 106 F. 3d 613(4th Cir. 1997), the Court of Appeals found no reasonable suspicion exited, even though the officers knew the defendant to have been recently released from prison following narcotics convictions, defendant was in a neighborhood know for drug trafficking, and his evasive behavior was preceded by someone else's entering the car and making gestures consistent with a covert exchange("huddling" with the two men's hand s "close together" as if to pass something). Id. at 615-16. Where the Courts of Appeals founds behavior far more extreme, by a known narcotics dealer, in a high-crime area does not create a reasonable suspicion, it is difficult to imagine that Edwards's moving toward his waist or a glove box would suffice in this case

11

"We are deeply troubled by the way in which the Government attempts to spin these largely mundane acts into a web of deception. Although these matters generally only come before this Court where a police seizure uncovers some wrongdoing, we would be remiss if we did not acknowledge that the exclusionary rule is our sole means of ensuring that police refrain from engaging in the unwarranted harassment or unlawful seizure of anyone-whether he or she is one of the most affluent or most vulnerable members of our community". United States v. Forster, 634 F. 3d 243, 248-249(4th Cir. 2011) See Terry 392 U.S. at 12-13("Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions.")

"We appreciate that police are often called upon to make very difficult decisions about when to conduct Terry stops, and, for that reason, we give them leeway to make these determinations. Nonetheless, the Government cannot rely upon post hoc rationalizations to validate those seizures that happen to turn up contraband". Foster 634 F.3d at 249. See United States v. Martinez-Fuerte, 428 U.S. 543, 565, 96 S.Ct. 3074, 49 L.Ed.2d 116 (1976) (noting that a purpose of the Fourth Amendment is to "prevent hindsight form coloring the evaluation of the reasonableness of a search or seizure").

    5.    Search of Vehicle

An officer may search the interior of a vehicle incident to a lawful traffic stop if he "possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that [a] suspect is dangerous and . . . may gain immediate control of weapons within the vehicle." United

States v. Holmes, 376 F.3d 270, 276 (4th Cir. 2004). (Internal quotation marks omitted). Thus, our inquiry is whether (1) The officers could have reasonably believed Edwards was dangerous and, if so, (2) whether the officers could have reasonably believed that Edwards could have gained immediate control of weapons.

The facts in the Edwards case are more in line with the facts in United States v. Neely, 564 F.3d 346 (4th Cir. 2009). In Neely, the district court found that the police officer "had articulable suspicion" to perform the vehicle search because the defendant was in a (1) high crime area (2) at 3:00 a.m. and (3) fumbling in a dark car in the middle of the night under the watchful eyes of two law enforcement officers for a trunk button created a reasonable suspicion that the defendant was dangerous. The Fourth Circuit Court of Appeals reversed the district court's denial of the defendant's motion to suppress because the search could not be justified under *Terry*, and therefore it found that the search of the interior of the defendant's car was in violation of his Fourth Amendment rights.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court grant the defendant's motion to suppress any physical evidence, including the weapon found in the vehicle and the statements made by the defendant, as being obtained without probable cause or without valid consent to search.

This the  8th   day of May, 2014.

                                        S/
                                  LUCKY T. OSHO
                                Attorney for Defendant,
                                JERRY LEE EDWARDS
                                402 West Trade Street, Suite 110
                                Charlotte, North Carolina 28202
                                (704) 531-9311 (Direct Line)
                                (704) 531-1931 (fax)