UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cr-00034-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **JERRY LEE EDWARDS,** | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion to Suppress (#21) evidence discovered and seized during a stop of defendant that occurred on August 15, 2013. Defendant maintains that the officers lacked reasonable suspicion that he was engaged in criminal activity when they effectuated the stop. The government filed no response. An evidentiary hearing was conducted on May 14, 2014, at which a number of officers testified along with defendant's brother.

I.

A.

At about ten o'clock on the evening of August 15, 2013, Officers Tolley, Fulton, and Salazar of the Charlotte-Mecklenburg Police Department were patrolling the parking lot of the Budget Inn, which is located on Old Interstate Road near Interstate 85. The Budget Inn is one of a number of hotels in the "motel corridor," an area having one of the highest crime rates in Charlotte. Testimony from the officers indicated that they were conducting patrols of the parking lots of the motels as part of Operation Heartbreak Hotel, targeting drug dealing and prostitution in these areas.

1

While sequestered, each officer who made the initial approach to the vehicle in which defendant was passenger testified that they were on routine patrol of the parking lot because it was known as an area where drugs and prostitution were rampant. Officer Tolley testified that the dark grey Toyota in which defendant was a passenger drew his attention because it was backed into a space taking up two spaces, the occupants were seated in the car with the interior and exterior lights off, and he wanted to check to see if the occupants were patrons of the hotel or engaged in illegal activity.

Before approaching the vehicle, the officers shined a car mounted flood light on the passenger area of the car and testified that they could only observe the occupants' upper torsos. As they approached the vehicle, the female driver of the car raised her hands, but the passenger (later identified as defendant) did not raise his hands. At that point, at least one officer yelled for defendant to raise his hands. Rather than instantly raise his hands, defendant continued to momentarily fumble in the glove box area and after a few seconds raise his hands. By this point, the officers had their weapons drawn and were pointing them at the defendant and the driver.

As the officers advanced closer to the car, Officer Tolley smelled the odor of marijuana emanating from the car and saw defendant drop a marijuana blunt as his raised his hands. Upon reaching the car, the officers saw a handgun protruding from the glove box area and later discovered two additional firearms as well as controlled substances.

While the officers testified that they approached the car to make a "voluntary" contact with defendant and the driver, the evidence elicited at the hearing indicated that the patrol vehicle(s) were parked in such a manner as to make egress by the driver difficult.

B.

On October 16, 2013, the United States Attorney filed a criminal complaint against defendant charging him with being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). Defendant waived preliminary hearing and a grand jury returned an indictment February 19, 2014, charging him with: two drug distribution offenses, violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C); possessing a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). On March 26, 2014, defendant moved to suppress the evidence derived from the stop asserting, *inter alia*, that the stop violated his Fourth Amendment right to be free from unreasonable searches and seizures.

II.

While the vehicle in which defendant was a passenger was already stopped at the time CMPD officers approached the vehicle, the court has considered the encounter to be a Terry stop rather than a "voluntary encounter" as the officer's testified. A passenger in a car, such as defendant, has standing to challenge a traffic stop due to the seizure of his person inherent in the stop. United States v. Rusher, 966 F.2d 868, 875 fn.4 (4th Cir. 1992).

Traffic stops are governed by Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, an officer must be able to testify to specific and articulable facts creating a suspicion of criminal activity that reasonably warrant a stop. Id. at 21. When determining if the officer's suspicion was reasonable, a court must take the totality of the circumstances into account. United States v. Cortez, 449 U.S. 411, 417-18 (1981). The officer's subjective motivation in making the stop is unimportant; it only matters whether the basis for the stop was objectively reasonable. Whren v. United States, 517 U.S. 806, 813 (1996).

Having considered all the circumstances surrounding the encounter with defendant, the court first finds the testimony of the officers who testified at the hearing to be credible. While counsel for defendant effectively cross examined the officers concerning when backup was called in and when an officer recalled smelling the odor of marijuana, such inconsistencies did not diminish the credibility of the testimony. Despite sequestration, the officers consistently testified that they were on routine patrol of the motel parking lot, which was well known by the officers to be an area where drugs were sold and prostitution was taking place, and that the officers were engaged in a crime reduction program in the hotel corridor. On cross, Officer Salazar testified that when he decided to approach the vehicle, the occupants were not engaged in criminal activity.

"It is well established that 'the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.'" United States v. Ward, 2012 WL 453330, at *1 (4th Cir. 2012) (quoting Terry v. Ohio, supra, at 30). "Reasonable suspicion is demonstrated when an officer 'points to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" United States v. Mason, 628 F.3d 123, 128 (4th Cir. 2010) (quoting United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008)). Reasonable suspicion

> defies precise definition. Far from being susceptible to a 'neat set of legal rules,' it is, as the Supreme Court has described, a 'commonsense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'

4

United States v. McCoy, 513 F.3d 405, 411 (4th Cir. 2008) (quoting Ornelas v. United States, 517 U.S. 690, 695-96 (1996)).

While the court agrees with counsel for defendant's argument that persons who happen to live, work, and recreate in so-called "high crime neighborhoods" should not be subject to random searches simply because they cannot afford to live in more affluent neighborhoods, acts that could be construed as completely innocent or acts that have innocent explanations can still form the basis of a reasonable suspicion justifying a brief investigatory stop. United States v. Arvizu, 534 U.S. 266, 267 (2002) ("[a]lthough each of the factors alone is susceptible to innocent explanation, and some factors are more probative than others, taken together, they sufficed to form a particularized and objective basis for stopping the vehicle."). While sitting in a parked car, being in a car at night with the lights off, taking up two parking spaces, and being in a motel parking lot at night without getting out of the car to go to a room, are not criminal activities in and of themselves, it is precisely those activities which raised these officers' suspicions that criminal activity was afoot. Indeed, the officers were patrolling the area because it was known to them and CMPD as a high crime area, known for drugs and prostitution.

In making such finding, the court has given very careful consideration to counsel's argument concerning those who find themselves living in high crime neighborhoods. Indeed, the court fully embraces Judge Gregory's concern that

> the fact that a stop occurred in a 'high crime area' is among the relevant contextual considerations, it cannot be an endpoint for a Terry or Long analysis. Otherwise, we relegate those unfortunate enough to have to live in such 'high crime areas' to second-class citizenship for purposes of the Fourth Amendment.

United States v. Griffin, 589 F.3d 148 (4th Cir. 2009) (Gregory, J., dissenting).  The area in which defendant found himself that night, the so called "hotel corridor," is not a residential neighborhood, but entirely commercial.

Defendant's mere presence in this high-crime area alone does not justify a stop. Rather, it was the activities of the defendant and his female companion that raised the officers' suspicions. They testified that they observed a male and female seated in a car in a motel parking lot known to them to be an area for drug sales and prostitution, the car was parked in backwards, it was approximately 10 o'clock at night, neither the car's interior nor its exterior lights were on, and there was no indication to them that the occupants were preparing to exit the car and patronize the hotel.  These activities are clearly consistent with the exact criminal activity they were seeking to reduce in such area, drug sales and prostitution. While certainly not a factor that influenced the officers' initial decision to approach the vehicle, those suspicions were certainly heightened when the officers observed defendant's reaction when he realized that a law enforcement officer was approaching the car.  United States v. Betemit, 899 F. Supp. 255, 260 (E.D.Va. 1995) ("[O]ne factor in the Terry calculus may be a person's reaction upon the appearance of a police officer.").

When considering the totality of the circumstances, the court may consider innocent activity; however, the innocent factors must collectively eliminate "a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied." United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004).  While people park in motel parking lots, sometimes park backwards into spaces, sometimes park at an angle to prevent other cars from dinging their doors, sometimes sit in their cars with their lights out at night, and find themselves in a high crime area, when taken together, common sense dictates that a substantial portion of

the innocent public would not engage in all such activities, but would instead turn on their interior lights and stay in their cars only long enough to gather their baggage, and then head into the relative comfort and safety of their motel room. Here, the totality of the activities observed by the officers justified their decision to engage the defendant in a brief investigatory stop as the observed activities, while innocent in and of themselves, were consistent with behaviors indicative of crimes known to occur with frequency in that very parking lot at that time of night. United States v. Smith, 396 F.3d 579, 587 (4th Cir. 2005) (finding that the lateness of the hour may raise level of suspicion).

While mindful of counsel for defendant's argument that there should not be two classes of citizens when considering the protections of the Fourth Amendment, "factors that may be 'susceptible of innocent explanation' when taken in isolation can combine to 'form a particularized and objective basis' for a stop when considered together." United States v. Bumpers, 705 F.3d 168, 174-75 (4th Cir. 2013) (quoting Arvizu, supra, at 277-78). While each activity observed is capable of innocent explanation prior to the time the officers decided to make the stop, the totality of the officers' observations and their knowledge concerning the activities in that area leads the court to conclude that the officers possessed and articulated at the hearing a reasonable suspicion that defendant and the other occupant of the vehicle were engaged in criminal activity at that time. In making such determination, the court has not taken into account the fruits of the stop, which included controlled substances and three weapons, one of which was found near the glove box and as to which the Officer Tolley testified defendant was reaching for as they approached. Here, the totality of the circumstances considered only included the observations of the officers up to the point they decided to make the stop.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Suppress (#21) is **DENIED**.

Signed: May 19, 2014

Max O. Cogburn Jr.
United States District Judge